**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

Maureen E. Meyer,                                           Civil No. 07-1168 (DWF/AJB)

            Plaintiff,

v.                                                             **MEMORANDUM
OPINION AND ORDER**

ARA Net, Inc.,

            Defendant.

---

Gerardo Alcazar, Esq., Robins Kaplan Miller & Ciresi LLP; Gordon R. Fischer, Esq., and John F. Hodges, Esq., Bradshaw, Fowler, Proctor & Fairgrave, PC, counsel for Plaintiff.

Katherine C. Bischoff, Esq., and V. John Ella, Esq., Jackson Lewis LLP, counsel for Defendant.

---

**INTRODUCTION**

Plaintiff Maureen E. Meyer brought suit against her former employer alleging that she was discriminated against on the basis of gender in violation of Title VII of the Civil Rights Act of 1964, Title 42 U.S.C. § 2000e, *et seq*. ("Title VII").[1] The matter is currently before the Court on a Motion for Summary Judgment brought by Defendant ARA Net, Inc. ("ARA"). For the reasons stated below, the Court grants ARA's motion.

---

[1] In her Complaint, Meyer originally asserted three separate counts against ARA. Counts I and III were dismissed with prejudice pursuant to the parties' stipulation. (Doc. No. 24.) Count II, Meyer's Title VII claim, is all that remains.

## BACKGROUND

ARA is a privately-held company that provides articles to newspapers and internet magazines showcasing particular consumer products and services. Meyer began working for ARA in April 2005 as an Administrative Assistant. Prior to being hired, Meyer interviewed with Ted Yoch, ARA's CEO, and Jeff Bialek, ARA's Director of Sales.

In August 2005, Meyer was given a $3,000 raise. In connection with the raise, Yoch sent Meyer a letter stating: "On behalf of [ARA], I want to commend you for your outstanding work. In recognition of your contributions, the company is electing to increase your salary." (Aff. of Katherine C. Bischoff in Supp. of Defendant's Mot. for Summ. J. ("Bischoff Aff.") ¶ 4, Ex. B at Ex. 26.) ARA contends that Meyer was actually performing poorly and that the pay increase was intended to motivate Meyer. Also on August 5, Meyer was given a "Job Goals" memorandum outlining her duties and ARA's expectations. (Bischoff Aff. ¶ 4, Ex. B at Ex. 25.)

In October 2005, ARA posted a job opening for the position of Media Relations Coordinator. (Bischoff Aff. ¶ 4, Ex. B at Ex. 30.) David Olson, ARA's Operations Manager, and Steve Gustafson, then ARA's Vice President, were involved in the hiring for this position. Meyer contends that she expressed her interest in the Media Relations Coordinator position to Olson and Gustafson and that she shared her concern about how Yoch would view her, as a woman, applying for another job within the company. (Bischoff Aff. ¶ 2, Ex. A (Dep. of Maureen Meyer ("Meyer Dep.") at 160.) Meyer

applied for, but was not offered, the position. The position was offered to another female. (Meyer Dep. at 221.)

In November 2005, approximately three weeks after she applied for the Media Relations Coordinator position, Meyer was terminated. Meyer asserts that immediately before her termination, Yoch stated: "This isn't working. You're clearly not . . . I understand that you've applied for another position. You're clearly not happy with your position. You need to leave." (Meyer Dep. at 168.) In his deposition, Yoch explained his perception of Meyer's performance at ARA: "She just generally sloughed off work. Her attitude was poor. She was bored. She didn't—she was—we made a mistake hiring her. She wasn't a good fit, and she was just interested in a paycheck." (Yoch Dep. at 67-68.) Meyer was replaced by another female. (Meyer Dep. at 221.)

## DISCUSSION

**I.   Standard of Review**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence, and the inferences that may be reasonably drawn from the evidence, in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'"

*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II.     Gender Discrimination

Meyer alleges that she was discriminated against on the basis of her gender in violation of Title VII. The parties agree that the burden-shifting framework promulgated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies to determine whether ARA is entitled to summary judgment on Meyer's claims. *See LaCroix v. Sears, Roebuck, & Co.*, 240 F.3d 688, 693 (8th Cir. 2001); *Johnson v. Baptist Med. Ctr.*, 97 F.3d 1070, 1072 (8th Cir. 1996). Under the *McDonnell Douglas* framework, if Meyer is able to establish a *prima facie* case of discrimination, the burden shifts to ARA to produce a legitimate, non-discriminatory reason for the adverse employment action. *Johnson*, 97 F.3d at 1072. If ARA is able to articulate such a reason, the burden then shifts back to Meyer to show that the proffered reason is merely a pretext for discrimination. *Id.*

To establish a *prima facie* case of sex discrimination, Meyer must demonstrate that: (1) she is a member of a protected group; (2) she was qualified for the job at issue; (3) she suffered an adverse employment action; and (4) circumstances exist which give rise to an inference of discrimination. *Wheeler v. Aventis Pharms.*, 360 F.3d 853, 857 (8th Cir. 2004). For the purposes of this motion, ARA does not dispute that Meyer can satisfy the first three prongs of her *prima facie* case. Thus, if Meyer can demonstrate circumstances that give rise to an inference of discrimination, she will have made out a *prima facie* case of discrimination.

An inference of discrimination will arise if there is evidence of a causal connection between Meyer's gender and her termination. *See, e.g.*, *Allen v. Interior Constr. Servs., Ltd.*, 214 F.3d 978, 982 (8th Cir. 2000) (ADA case). One way to establish that Meyer's termination occurred under circumstances which create an inference of discrimination is for Meyer to produce facts showing that similarly situated male employees were treated differently. *See Wheeler*, 360 F.3d at 857. Evidence of disparate treatment is not the only way in which a plaintiff may establish an inference of discrimination. Meyer may rely on any credible evidence tending to establish that ARA acted adversely to her "on account of" her gender. *See Allen*, 214 F.3d at 982 (citing *Greer v. Emerson Electric Co.*, 185 F.3d 917, 922 (8th Cir. 1999)).

Meyer claims that ARA treated women and men differently. First, Meyer claims that she is similarly situated to a male employee, Josh Madigan, who applied for and received a promotion. To demonstrate that she is similarly situated to Madigan, Meyer

5

asserts that they were "at the same level" in an employee flow chart. (Aff. of Gordon R. Fischer in Supp. of Pl.'s Resistance to Mot. for Summ. J. ("Fischer Aff.") ¶ 3, Ex. 2 at EEOC-60.) The employee flow chart on which Meyer relies shows that Madigan was a "Brand Manager" while Meyer was an "Office Manager." Other than demonstrating this very general similarity between Meyer's and Madigan's positions—that they are both managers of some type directly under Yoch and next to each other on an employee flow chart—Meyer has not demonstrated any meaningful or relevant similarities between their respective positions at ARA. Meyer does not point to any evidence describing Madigan's job duties, what promotion he received, and in what ways, if any, his promotion was similar to the one sought by Meyer. Thus, on the record before the Court, Meyer's showing of similarity with Madigan fails. Therefore, ARA's different treatment of Madigan cannot be used to raise an inference of discrimination against Meyer.

Meyer also attempts to raise an inference of discrimination by showing that other women were discriminated against at ARA.[2] For example, Meyer asserts that Madigan received paternity benefits while a female employee was denied maternity benefits. This evidence, however, even if true, does not support an inference that ARA discriminated against Meyer because of her gender. Meyer has not demonstrated that Madigan is similarly situated to her in any way, and thus Madigan is not a proper comparator.

---

[2] Much of this evidence appears to be based on inadmissible hearsay. Aside from the hearsay issues, however, this evidence does not support an inference of discrimination. In so discussing the evidence, the Court is not suggesting that this evidence would ultimately be admissible.

Second, Meyer has not demonstrated that any alleged denial of another female employee's maternity benefits is in any way causally connected to Meyer's termination.

Meyer also points to evidence that a female employee was asked to leave a meeting after arriving late, while three men who also arrived late were not asked to leave. Meyer suggests that this evidence demonstrates that women, in general, were treated less favorably than men at ARA. Without more, however, this evidence fails to satisfy Meyer's *prima facie* case. Meyer has not demonstrated that the alleged unequal treatment of the female employee was due to the female employee's gender or that it was in any way causally connected to Meyer's termination.

Meyer also claims that Yoch made offensive comments to women and that these comments raise an inference of discrimination. Specifically, Meyer asserts that Yoch yelled at the female employee who arrived late to a meeting and threatened her job. There is no evidence that these comments by Yoch were in any way related to Meyer or otherwise connected to Meyer's termination. In addition, to infer any discriminatory motive from Yoch's comments to the female employee would require speculation. *See, e.g.*, *Frieze v. Boatmen's Bank of Belton*, 950 F.2d 538, 540-41 (8th Cir. 1991) (noting that an inference is reasonable only if it can be drawn from the evidence without speculation). There is simply no evidence regarding the substance of Yoch's comments, other than he yelled at a female employee. Thus, there is no evidence that would suggest the comments were directed at the female employee because of her gender. Meyer asserts

several additional instances where Yoch allegedly yelled at women. None of these instances, however, are linked to Meyer's termination.

Meyer also asserts that ARA shuts women out of top management positions and punishes women who apply for promotions. In support, Meyer points to an ARA personnel chart that shows that in 2005 ARA had seven people reporting directly to Yoch—five of them male and two of them female. (Fischer Aff. ¶ 3, Ex. 2 at EEOC-60.) Meyer was one of the females reporting to Yoch. (*Id.*) This chart and ARA's corporate structure, standing alone, simply do not demonstrate that ARA shut women out of management or that Meyer was terminated because of her gender.

The bulk of evidence proffered by Meyer in support of her *prima facie* case relates to Meyer's performance. In particular, Meyer contends that contrary to ARA's assertions, she performed well in her position at ARA. Meyer points to evidence that Meyer contends demonstrates that she did not receive any oral or written warnings about poor performance; that she was doing good work; that she received a raise; that ARA's allegations of poor performance came only after Meyer was terminated; and that ARA's reason for terminating her has shifted over time. The Court need not address each of Meyer's individual assertions of good performance because none of the evidence submitted by Meyer demonstrates circumstances that give rise to an inference of discrimination. Even if Meyer can demonstrate that she was actually performing well, she simply has not proffered any evidence connecting her termination to the fact that she is a woman.

In fact, evidence in the record suggests otherwise. First, the Media Relations Coordinator position for which Meyer applied was ultimately filled by a woman and, after her termination, Meyer was replaced by a woman. In addition, Yoch participated in the decisions to both hire and fire Meyer, (Meyer Dep. at 87, 167-68; Bischoff Aff. ¶ 3, Ex. B at 18; Bischoff Aff. ¶ 4, Ex. C ("Yoch Dep.") at 32-34; Bischoff Aff. ¶ 5, Ex. D ("Bialek Dep.") at 119), and less than seven months passed between Meyer's hiring and her termination. It would be unreasonable to conclude that Yoch became biased against women in the short time after he hired Meyer. *See, e.g.*, *Grossman v. Dillard Dep't Stores, Inc.*, 109 F.3d 457, 459 (8th Cir. 1997) (ADEA case); *Lowe v. J.B. Hunt Transp., Inc.*, 963 F.2d 173, 174-75 (8th Cir. 1992) (ADEA case).

Even if Meyer could establish a prima facie case, ARA has come forward with a legitimate, nondiscriminatory reason for its actions. ARA maintains that it terminated Meyer because she was "not a good fit," in part because Meyer performed poorly and was not perceived to be "happy" in her position. (Meyer Dep. at 168.) This is a legitimate reason to terminate an employee. *See, e.g.*, *Rose-Matson v. NME Hosps., Inc.*, 133 F.3d 1104, 1109 (8th Cir. 1998) (noting that Title VII prohibits intentional discrimination, not "employment decisions based on other factors, such as job performance, erroneous evaluations, personality conflicts, or even unsound business practices"). Therefore, the presumption of discrimination disappears and Meyer can avoid summary judgment only if the evidence considered in its entirety creates a fact issue as to whether ARA's proffered reason is pretext for intentional discrimination. *See, e.g.*, *Johnson*, 97 F.3d 1073.

Meyer contends that ARA's stated reason for terminating her was false and has shifted over time. In support, and as discussed above, Meyer asserts that she was performing well at ARA and points to the fact that she received a raise in August 2005. Meyer may have enough evidence that, if believed, could convince a reasonable jury that Meyer was not performing poorly. However, ARA also claims that Meyer was not a "good fit" for performance and other reasons. Meyer has not submitted evidence demonstrating that this justification is false.[3] Even if Meyer could establish that ARA's reason for terminating her was false, in order to survive summary judgment, Meyer still must demonstrate that gender discrimination was the real reason for her termination. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 519 (1993) (explaining that "[i]t is not enough . . . to *dis* believe the employer; the fact finder must *believe* the plaintiff's explanation of intentional discrimination" (emphasis in original)). For essentially the same reasons that Meyer failed to meet her burden at the *prima facie* stage, Meyer has failed to submit evidence from which an inference of gender discrimination can be reasonably drawn. Based on the record before the Court, no rational fact finder could conclude that ARA's action was directed at Meyer because she is a woman.

---

3   "A Plaintiff may prove pretext by showing that the employer's stated reason for the adverse employment action has no basis in fact." *EEOC v. Wal-Mart Stores, Inc.*, 477 F.3d 561, 570 (8th Cir. 2007). In addition, evidence of disparate reasons for an adverse action may support an inference of discrimination. *Allen*, 214 F.3d at 983. Here, however, there is no dispute that at the time Meyer was terminated, Yoch indicated that he thought Meyer was not happy in her position. Meyer has not demonstrated that this justification has no basis in fact or that it has shifted over time.

## CONCLUSION

For the reasons stated, **IT IS HEREBY ORDERED** that:

1. ARA's Motion for Summary Judgment (Doc. No. 36) is **GRANTED**.

2. The Complaint is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  July 1, 2008                                s/Donovan W. Frank
                                                                 DONOVAN W. FRANK
                                                                 Judge of United States District Court